BROOKS, Appellant, *vs.* WIMER *et al.*, Respondents.

1. Under the first section of the act concerning "fraudulent conveyances," (R. C. 1845,) a deed of a stock of goods to a trustee, for the benefit of creditors, which, on its face, reserves to the grantor the right to continue *to sell the goods in the usual course of his business* until default made in the payment of the debts intended to be secured, is, as a matter of law, void against existing and subsequent creditors and purchasers.

*Appeal from St. Louis Court of Common Pleas.*

This was an action commenced August 27, 1853, by Brooks, to recover in the form of damages the value of a stock of goods seized and sold by the defendant, Wimer, as sheriff of St. Louis county, under executions in favor of the other defendants against William W. Price, dated respectively June 16th, and July 14th, 1853. The plaintiff claimed the goods under a deed from William W. Price to him as trustee, for the benefit of certain creditors of Price, dated March 5th, acknowledged March 15th, and recorded March 30th, 1853. This deed was set out at large in the petition and made part of it.

The deed, after reciting that Price had already obtained from certain enumerated creditors an extension of time upon their demands against him, for which, in pursuance of the extension, he had executed various notes, the earliest of which was payable six months from February 10th, 1853, and that he expected to obtain a like extension from other creditors, to-wit: Carter & Rees, Campbell, Chess & Co., and Marshall & Brother, proceeded as follows: "Now therefore, in consideration of the premises, and of the sum of one dollar to him in hand paid by Edward Brooks, of the city of St. Louis, receipt whereof is hereby acknowledged, and to carry out the agreements and purposes above specified, the said Price does hereby sell, transfer and convey to the said Brooks the entire stock of hardware, goods, wares and merchandise now on hand in the store occupied by said Price on Main street in said city, or wherever else the same may be, and also all the hardware, goods and merchandise, which the said Price may purchase or acquire in the course

of, or for the purpose of carrying on his said hardware and commission business, during the time embraced within the period of said extension. *To have and to hold* the same to the said Brooks, his executors and administrators, in trust for the purposes herein stated, and with the following restrictions and conditions, viz : If the notes above mentioned, given by said Price in pursuance of the terms of said extension, and the other sums agreed by him to be paid, as above stated, under the terms of the extension already agreed upon, be paid when they become due, as above mentioned; and in case the said Carter & Rees, Campbell, Chess & Co., and Marshall & Brother, or any of them, do assent, then also if the said sums that will be payable to those who do so assent be also paid agreeably to the terms of the said extension, then this deed shall be void, and the property hereinbefore conveyed shall be released at the cost of said Price ; but if said notes or any *one of* them agreed to be paid under the terms of said extension already assented to, as above stated, or said sums or any one of them that will be payable if an extension be assented to by said Carter & Rees, Campbell, Chess & Co., Marshall & Brother, or either of them, shall not be paid when the same shall be due, as above stated, then this deed shall remain in full force ; and the said Brooks may then take possession of said hardware, goods, wares and merchandise, and proceed to sell the same, as he may in his judgment deem best for the interest of all concerned, and receive the proceeds of such sale, out of which he shall pay first the costs and expenses of this trust, next, the full amount that shall remain unpaid of said notes and each of them above mentioned, and of said other sums agreed or that may be agreed to be paid under the terms of the extension above mentioned, whether the time above named for the payment of said notes or other sums shall have arrived or not; and if there be not sufficient to pay all said notes and other sums remaining unpaid, then the same are to be paid *pro rata.* And if there be any balance, after paying all, the same shall be paid to the said Price, his executors, administrators or assigns. *And it is*

*further expressly provided that, until default shall be made
by the said Price in the payment of some of said notes or
sums above mentioned, the property hereby conveyed or in-
tended to be conveyed, or any part thereof, shall not be taken
possession of or interfered with by the said Brooks, but the
said Price may, until such default, continue to sell and dis-
pose of the same in the regular or usual course of said busi-
ness."*

A demurrer to the plaintiff's petition was sustained by the
Court of Common Pleas, and he appealed to this court; and
the question presented was, whether he acquired any title by
the deed which would enable him to sustain this action.

*Glover & Richardson* (with *Comfort & Manter,*) for appel-
lant. There is nothing on the face of the deed that determines,
in point of law, the same to be fraudulent as to the creditors of
Price. The possession of the goods remaining with the grantor
did not render the deed invalid, because it was duly acknowledged
and recorded. (Act concerning Fraudulent Conveyances, R. C.
1845, p. 527, §8.) The tenth section of that act only applies
to absolute sales; but if it embraced the case at bar, was not
conclusive on plaintiff's title. (15 Mo. Rep. 416.) The con-
sideration of the deed was proved by its own recitals. (19· Mo.
Rep. 17, overruling 5 Mo. Rep. 484.) This case has been
erroneously likened to that in 6 Mo. Rep. 302 and 317. This
deed requires no release. It prefers those who may grant an
extension, but the advantage is given to the creditor. The
right to prefer enabled the grantor to cut off absolutely those
who had not agreed to the extension, but he did less. Here,
the whole fund would not pay the preferred debts. (16 Mo.
Rep. 594.) The power to sell in the course of business did
not render the deed void. (11 Mo. Rep. 373.) All the debts
of the grantor, after paying those preferred, are to be paid
*pro rata;* and so it is only the surplus then left which is to go
to the grantor. It is fraud in fact, intentional fraud, and not
fraud such as the law implies or infers from facts, that avoids
a deed under the act concerning " assignments," (R. C. 1845,

p. 127.) There must not only be a fraudulent purpose in the mind of the grantor, but the grantees must also be convicted of the same fraudulent motive. (19 Mo. Rep. 27.)

*Hart & Jecko*, for respondents. I. The deed gave Brooks no right to the possession of the goods until default made in the payment of some one of the notes, and as none of the notes had become due when this suit was commenced, he had no right of action. II. The deed was fraudulent on its very face, because, 1. It contains a provision which cuts off from its benefits all those who do not assent to an extension of time. 2. It provides that the grantor shall remain in possession until default. 3. It provides that the grantor shall continue *to sell and dispose of the goods*, and of course pocket the proceeds, there being no express provision that he should account for them. 4. It provides that the surplus, *after paying those who agree to an extension*, shall be paid to the grantor.

Upon the whole subject, the following authorities were cited : (Burrill on Assignments, 401. 2 Tucker's Comm. 432. 11 Wend. 187. 7 Paige, 272, 568. 6 Hill, 438. 4 Comstock, 580. *Goodrich* v. *Downs*, 6 Hill, 438. *Simpson* v. *Mitchell*, 8 Yerg. 417. *Jordan* v. *Turner*, 3 Blackford, 309.)

SCOTT, Judge, delivered the opinion of the court.

The deed in this case comes within the first section of the act concerning fraudulent conveyances. That section enacts that every deed of gift and conveyance of goods and chattels, in trust to the use of the person so making such deed of gift or conveyance, shall be void as against creditors, existing and subsequent, and purchasers. In the case of *Robertson's Ex'r* v. *Robards*, (15 Mo. 459,) this court held that, if a conveyance on the face of it appears to be for the use of the person making it, as a matter of law the court will declare it void against creditors, just as it would declare a bond conditioned to murder a man or to do any other unlawful act. There is no fact here to be found by a jury. On the very face of the instrument by which a party intends to convey his goods for the benefit of his credi-

tors, there is a reservation to himself of the right of disposing of them, without any accountability to any one for the proceeds of the sale. Thus, under this pretended assignment for the benefit of his creditors, the grantor disposes of all the assigned property for his own use. This, then, is a deed in trust to the use of the person making it, and under the authority of the first section of the act concerning fraudulent conveyances, the court, as a matter of law, upon its very face, was warranted in pronouncing it void.

The assignment in the case of *Milburn* v. *Waugh & Corthran,* (11 Mo. Rep. 369,) did not reserve to the grantor the right of disposing of the goods conveyed in trust.

We do not regard the views expressed in relation to this case as at all conflicting with the former doctrine of this court, that fraud is a question of fact for a jury, except in those cases in which, from the very face of the instrument, the conveyance is void under the statute. In cases where the terms of a conveyance are by possibility consistent with good faith, and it has upon it the elements of a legal instrument, the question of fraudulent intent and want of good faith in making it, must be submitted to the jury. In such case, he who assails the instrument on the ground of fraud will submit to the jury all the evidences of bad faith arising from the form of the conveyance or its stipulations in favor of the grantor which serve to create a presumption of fraud. But this evidence will be open to explanation, and may be shown to consist with good faith in the parties.

The other judges concurring, the judgment will be affirmed.