KOPPELMAN FURNITURE COMPANY, Appellant, v. WILLIAM FRICKE, Defendant; FRED. H. FRICKE, Interpleader, Respondent.

St. Louis Court of Appeals, February 4, 1890.

**Fraudulent Conveyances**: EFFECT OF MORTGAGEE'S ENTRY INTO POSSESSION. A chattel mortgage, invalid in its inception because it confers a general power of sale on the mortgagor, becomes valid, if the mortgagee with the mortgagor's consent enters into the possession of the mortgaged property prior to a levy thereon.

Koppelman Furniture Co. v. Fricke.

*Appeal from the Franklin Circuit Court.*—HON.
RUDOLPH HIRZEL, Judge.

AFFIRMED.

*John W. Booth*, for the appellant.

The chattel mortgage, under which respondent claimed the goods attached in the hands of Wehrmann, on its face contemplated that the mortgagee should continue in possession of the mortgaged property and use the same as his stock in trade, and that whatever goods, in the course of the business, should be brought into the stock should be subject to the mortgage. The mortgage therefore was not only a void mortgage under the statute (R. S., sec. 2497), but, by reason of the features which made it so void, it was evidence that the transaction of which it formed a part was in fraud of creditors. The conclusion is irresistible that, though respondent loaned the money in the first instance, yet that as between him and the mortgagor it was the property of the mortgagor, to use and make what he could out of it, with the mortgage to stand as a cover between him and parties dealing with him. *Lodge v. Samuels*, 50 Mo.; *Armstrong v. Tuttle*, 34 Mo. 432; *Cator v. Collins*, 2 Mo. App. 225; *State v. Bouton*, 3 Mo. App. 564; *Bullene v. Barrett*, 87 Mo. 186; *Wood v. Hall*, 23 Mo. App. 110; *Dobyns v. Meyer*, 20 Mo. App. 67, on which respondent relied in the circuit court do not appear applicable to such a case as this

*J. C. Kiskaddon*, for the respondent.

Plaintiff's writ of attachment was not sued out until ten days after the interpleader, as mortgagee and creditor, had taken full and complete possession of the goods. While the mortgage may have been fraudulent

as to creditors, it was good between the parties, and the taking possession of the goods by the mortgagee, with the consent of the mortgagor, cured all defects in the mortgage; for the reason that, until some specific lien of some other creditor had attached to the goods, the mortgage, as between the parties thereto, was a lawful disposition by the mortgagor of his goods in favor of the mortgagee, empowering the latter to take possession of them to satisfy his claim. *Petring v. Dry Goods Co.*, 90 Mo. 649; *Greely v. Reading*, 74 Mo. 309; *Nash v. Norment*, 5 Mo. App. 545; *Wood v. Hall*, 23 Mo. App. 110; *Dobyns v. Meyer*, 95 Mo. 132; *Estes v. Fry*, 20 Mo. App. 80; *Worley v. Watson*, 22 Mo. App. 546.

BIGGS, J., delivered the opinion of the court.

On the twentieth day of November, 1886, the plaintiff instituted a suit by attachment in the circuit court of Franklin county, against the defendant William Fricke.

The case was submitted to the court on the following agreed statement of facts, to-wit:

"It is hereby agreed by and between the said plaintiff and defendant and interpleader, that in all proceedings between said parties, or any of them, the following may be read and received as an agreed statement of facts, and as sufficient evidence of the facts in such statement recited as follows, to-wit:

"*First.* That on or about the first day of September, 1885, said defendant bought of the then administrator of one Henry Hoehner, deceased, a certain stock of furniture, coffins, etc., then in a certain house on lot number 25, Hammack's addition to the town of New Haven, Franklin county, Missouri, and under such purchase took possession of said furniture.

"*Second.* That at the time of said purchase said interpleader loaned to said defendant to pay for said furniture the sum of one thousand dollars, and said

defendant paid the one thousand dollars so loaned to him to the said administrator in full of the purchase money of said furniture, and at the time of said loan executed and delivered to said interpleader his, the said defendant's, three certain promissory notes each dated September 1, 1885, and each signed by said defendant, and each payable to the order of said interpleader; one of said notes being for the principal sum of one thousand dollars, and payable one year after its date, with interest from its maturity at the rate of ten per cent. per annum, another of said notes being for the sum of thirty-five dollars, and payable six months after its date, with interest from its maturity at the rate of ten per cent. per annum, and the third of said notes being for the sum of thirty-five dollars, and payable twelve months after its date, with interest from maturity at the like rate of ten per cent. per annum. The said two notes for thirty-five dollars each being in fact given as interest notes, for the use of said principal sum for the twelve months next following the date of said first note. That, at the time of lending of the said money and of executing and delivering said notes, said defendant to secure the payment of said notes executed and delivered to said interpleader a mortgage in words and figures as follows :

"The substantial parts of the mortgage are as follows : The mortgagor William Fricke conveyed to the mortgagee, Fred. H. Fricke, the following goods and chattels, to-wit: Forty bedsteads, nine bureaus, six wardrobes, four hundred chairs, one desk, twenty tables, ten sofas, six washstands, cradles and outfits, forty coffins, all lumber, mattresses, mirrors, pictures and frames, and all such furniture which is now in my house, warehouse and store, situated in New Haven, Missouri; said premises being known as lot 25, Hammack's addition, and all *such* furniture *which may be bought* hereafter to replenish my said stock, etc.

Upon condition that I pay to said Fred. H. Fricke the sum of one thousand dollars, etc. The parties hereto agree that until condition broken said property may remain in possession of William Fricke, etc.

" Which mortgage was duly acknowledged on September 8, 1885, and filed for record in the recorder's office of Franklin county, Missouri, on September 9, 1885.

"*Third.* That the specific personal property described in said mortgage is the identical property purchased by defendant of said administrator.

"*Fourth.* That defendant having so bought and paid for said furniture, and executed and delivered said notes and mortgage, immediately entered into the business of dealing as a merchant in buying and selling furniture, coffins, etc., at the store or house in which said furniture was at the time of his said purchase thereof, and carried on said business at said place from that time until the tenth day of November, 1886. That when defendant first began so to carry on said business the furniture so bought by him constituted his stock in trade in said business, and that while he so carried on said business he from time to time sold and delivered articles of furniture, coffins, etc., out of said stock, and from time to time replenished his said stock by the purchase of other articles of furniture, coffins, etc., and by placing articles so purchased in said store, for sale in the regular course of his said business.

"That on said tenth day of November, 1886, the entire stock in trade of said defendant in his said business, at said store or house, consisted of furniture, coffins, etc., of which about one-half in quantity and value consisted of articles unsold and remaining over from the original stock first purchased as aforesaid, and the balance consisted of property of like kind by defendant purchased and placed in said store by way of replenishing said stock.

"*Fifth.* That on the tenth day of November, 1886, all of the said notes being then overdue, and no part thereof having been paid, defendant delivered to said interpleader under said mortgage, and for the purpose of selling the same and applying the proceeds to the satisfaction of said notes, the possession of all the then stock in trade aforesaid of defendant then in said store or house, and said interpleader then took actual possession of all said stock, the same then consisting, as aforesaid, in part of said original stock, and in part of property bought as aforesaid to replenish said stock. That upon so taking and receiving possession of said property, as aforesaid, said interpleader put one Schure into the charge and control of said property, as agent of said interpleader, and afterward said Schure, as agent for, and by the direction of, said interpleader, transferred said property to one Louis Wehrmann as agent for said interpleader. That afterwards, on the third day of January, 1887, the said Louis Wehrmann was duly garnished in this cause, and said property was, in this cause, duly attached in his hands as the property of said defendant.

"*Sixth.* That afterwards on the third, fourth and fifth days of January, 1887, said Wehrmann, as agent for said interpleader, sold all the property so attached in his hands, at and for the price of six hundred and sixty-four and forty one-hundredths dollars, and took and received the purchase money of the sale so by him made.

"*Seventh.* That said sum of six hundred and sixty-four dollars and forty cents was, at said sale, the reasonable value of the property so sold, less the cost of such sale.

"*Eighth.* That while said defendant, as aforesaid, carried on the business aforesaid, at said store or house, he, at the city of St. Louis, Missouri, purchased of plaintiff, between the twenty-second day of February,

1886, and the twenty-seventh day of May, 1886, furniture for replenishing his said stock in trade, to the amount of two hundred and seventy-three dollars and forty-two cents, and paid on account thereof one dollar and seventy-two cents, leaving due plaintiff, on account of said purchase, two hundred and seventy-one dollars and seventy cents.

" That on the tenth day of October, 1886, plaintiff demanded of defendant payment of said sum of two hundred and seventy-one dollars and seventy cents, which sum was then due plaintiff from defendant upon account of said sales made by plaintiff to defendant.

" *Ninth.* That, at the time of the delivery to defendant of the property so sold to defendant by plaintiff, plaintiff had no actual notice or information of any of the facts herein admitted, as to the loan of money by said interpleader to defendant, and no admission herein made is to be taken as evidence that any of the facts herein admitted came to the notice of any party not participating therein prior to the institution of this suit."

The court found the issues for the interpleader and rendered judgment accordingly. The plaintiff duly filed a motion for new trial, on the ground that the court erred in rendering its judgment for the interpleader, and that the judgment should have been for the plaintiff. The court overruled said motion, and the plaintiff duly excepted, and filed its bill of exceptions and affidavit for an appeal, and the appeal was granted

The chattel mortgage in controversy must be construed to be a conveyance to the use of the grantor, and under section 2496 of the Revised Statutes, 1879, it was void as to creditors and purchasers. The instrument, by its terms, clearly authorized a sale in the usual course of trade of the mortgaged property by the mortgagor, and for the latter's benefit. However, the agreed statement of facts shows that, before the plaintiff

acquired any lien on the property, the interpleader, with the consent of the mortgagor, took possession of it under the mortgage.

Until quite recently it was a matter of doubt and controversy, whether the subsequent possession of the property by the mortgagee under a conveyance like the one under consideration would purge the mortgage of its fraudulent character. In the case of *Armstrong v. Tuttle*, 34 Mo. 432, it was held that no after-acquired possession by the mortgagee could validate such a conveyance. This case was followed by the case of *Greely v. Reading*, 74 Mo. 309, in which the court on a like state of facts arrived at a conclusion directly the reverse of that reached in *Armstrong v. Tuttle, supra.* The precise question was next presented to this court in the case of *Dobyns v. Meyer*, 20 Mo. App. 66, in which this court followed *Greely v. Reading.* The supreme court, in the last-mentioned case, did not overrule or refer to the case of *Armstrong v. Tuttle*, and for that reason the case of *Dobyns v. Meyer* was certified to the supreme court. The latter court, in passing on the case (*Dobyns v. Meyer*, 95 Mo. 132), decided that a mortgagee, who takes possession of the mortgaged property before levy thereon by an attaching creditor, is entitled to hold the property, notwithstanding there was an agreement between the mortgagor and mortgagee that the former might sell the property in the usual course of business for his own benefit. This case settles the question adversely to the plaintiff in the case at bar, and, unless there was actual or intentional fraud in the execution of the mortgage, the judgment of the circuit court will have to be affirmed.

The counsel for plaintiff argues that the terms of the mortgage itself, and the fact that the defendant was left in possession of the property with power to sell, disclose a purpose or intention to cover up and shield the property of the mortgagor from the demands of

other creditors.    We do not think such a conclusion is
fairly inferable.    It is conceded that the interpleader
is a *bona fide* creditor, and that he furnished the defend-
ant with the money (which was secured by the mort-
gage) to pay for the original stock of goods.    At that
time the defendant owed no one but the interpleader
(so far as the record shows), and we think it would be
unreasonable to hold that the fact, that the defendant
was permitted to remain in possession and sell the
goods, furnishes any evidence that, at the time of
the execution of the mortgage, the parties had formed
the design or intention to defraud the subsequent
creditors of the defendant.

The interpleader's notes matured September 4,
1886, and he took possession of the goods under his
mortgage on November 10, 1886.    This act of forbear-
ance or indulgence, in the absence of other criminating
circumstances, ought not to be construed as evidence of
a dishonest or fraudulent purpose.    *Field v. Ridgely*,
116 Ill. 425.

With the concurrence of the other judges, the
judgment will be affirmed.    So ordered.